Our first case is 23-1156 U.S. v. Lowe. Mr. Wieselke. Good morning, your honors. May it please the court, Jason Wieselke, my membership through the court's CGA panel for being here this morning. I represent Mr. Lowe in this appeal. Three issues demand reversal of Mr. Lowe's conviction or his sentence. First, the search and seizure of a zipped suitcase in a locked storage locker in a private apartment building violated the Fourth Amendment. Second, the gun found in that zipped suitcase was not being used in furtherance of drug trafficking. Third, the base offense level must be 18, not 20 because this was a crime involving MDMA, not meth. Counsel, how did you preserve or where did you preserve your in furtherance of argument? Yes, your honor. I appreciate the question. In our brief, I believe on page 11, we preserved that below both in the Rule 29 motion as well as in the motion to dismiss the indictment. The Rule 29 motion during the trial specifically requested dismissal of the account for in furtherance of possession. It did not request dismissal of the account for mere possession. Counsel below argued that the mere possession or the in furtherance of possession had not been proved because the gun had not been tied to Mr. Lowe and specifically at volume two of the transcript, pages 435 to 437, that's discussed. How do you reconcile this claim to an expectation of privacy in the suitcase with the denial that the loaded gun was not associated with his drug trafficking conviction? Well, yeah. I think the question that this court should ask itself is how can there be no basis to suppress because there isn't possession of a gun in the suitcase? And what's critical here in the possession in furtherance of is his access to this gun, which is non-existent. Mr. Lowe is in jail at the time this illegal search occurs and his expectation of privacy is laid out by the government in its argument when it's in its witness testimony when Officer Buechler, if I'm pronouncing that correctly, says that the informant told the officer, the probation officer, who's not there during the search, he's on vacation, which is another reason why this search violates the Fourth Amendment, which I can get to in a moment. But Officer Buechler says this CI is reliable, this CI told me this was Mr. Lowe's stuff in the storage locker. So right there we know that the possessions, the items in the storage locker are Mr. Lowe's and that's a reasonable expectation of privacy that is both subjective and one recognized by society at large. You don't think that you need the defendant to affirm that? That it's enough just to show that a confidential informant said that? Yes, and I think what we need to do is look at what this search, the parameters of the search and the perspective of the officers, the Denver police officers who are doing this search and Officer Buechler. They believe, or at least Officer Buechler does, that this is Mr. Lowe's possessions. The only reason they are there is because it is allegedly Mr. Lowe's possessions. So I'm intrigued. What is your best case where the defendant could preserve or at least establish a right or an interest in the property when he or she has not admitted an interest in that property, but a confidential informant, not identified precisely, said that that was the case? Yes, so I think Rogers is a case in which completely different from ours, which demonstrates why this case demands reversal. So in Rogers you have a hotel room where the officers walk in, they see crack, they see a razor blade covered in cocaine, they have seen deals in manufacturing go down in that room. None of that exists here. There is no evidence whatsoever that there is any manufacturing, any distribution, any sales. Is that responsive to my question? My question was a case specifically where possession was established in the court's mind when the defendant never admitted to possession, but a confidential informant said the defendant had that possession? Yes, I believe that is the Freeman case, Your Honor, where the cops searched, the defendant did not say that it was his possession, but he did say that it was his possession. I apologize, Your Honor, it's not Freeman. I will tell you exactly which case it is. It's the one out of Kansas City where the Kansas City cops come in and the court said, yes, Ruckman, excuse me. Ruckman says it's the KF case. Which case? I apologize, Ruckman. Ruckman is 806 F3rd 1471 in which this case said that the record contains no statement by Ruckman that he had any subjective expectation of privacy. Perhaps the filing of the motion to suppress presupposes such subjective expectation. No doubt Ruckman would so testify. But that's not responsive to my question. My question wasn't whether you could make an inference from a filing of a motion to suppress or not, but you are asserting that because the confidential informant said this was his stuff, the suit case and the stuff in it and that that's enough to establish a possessory interest, even though the defendant never acknowledged it. And I'm asking, do you have any other case where without the defendant acknowledging or claiming that it was his stuff, that the informant was enough to establish his possessory interest? So there's no case with exactly the same facts with a confidential informant. This isn't a nuanced issue. This is a core issue. But Ruckman says this court said in Ruckman, we don't need to have somebody affirmatively testify or provide an affidavit that this is these are their possessions. We can. This court can assume that these are his possessions from other evidence. And the other evidence here is very, very clear. Number one, the the parole officer, probation officer says this is his stuff. Cops, please go to this apartment. Look in this eighth floor storage unit area for stuff that I've been told is Mr. Lowe's. And that is enough to establish that this is Mr. Lowe's possessions for purposes of a suppression motion. But don't you have a problem even if you can satisfy the first part of the test and show a subjective expectation on the next part? How is it reasonable here? And particularly what I'm concerned about is that your client was not lawfully possessing the unit. Sure. Well, I think I would draw an analogy to something that maybe everybody in this room has had experience with. You're moving apartments from one apartment to another and you have to store stuff, maybe in an empty storage locker in the garage of the apartment you're moving into while you move back and forth. Does that the fact that you don't rent that storage locker, it's not yours, but you put a lock on it because you don't want somebody coming in the garage back and forth while your moving truck is getting filled or pickup trucks are getting filled and refilled. You have no subjective expectation of privacy. You know that society doesn't recognize an expectation of privacy there. Of course it does. This is a zipped suitcase. There's nothing about the suitcase itself that is inherently suspicious. I appreciate your argument as a practical matter, but the Supreme Court tells us in Byrd that the central inquiry at this point turns on the concept of lawful possession. And so in your hypo, I don't see how that is satisfied. Maybe I'm missing something. Sure. Well, I think what's important for the public to understand is that the place is less important than the privacy expectation. I mean, the Fourth Amendment protects privacy, not property. It protects people, not places. And so when somebody has a zipped suitcase behind a locked cage with nothing about it that demonstrates the suitcase itself is suspicious for any reason whatsoever, there's some cardboard boxes and maybe some clothes in there as well, and I think a printer, there is absolutely an expectation of privacy that society is ready to recognize. It's like I put my stuff in a neighbor's garage without his consent, and then I deny that it's my stuff, and then I trundle along later and say, oh, I have an expectation of privacy in my stuff that was stored basically as a squatter without anybody's consent or knowledge. That just seems odd to me to grant Fourth Amendment privacy protections in that circumstance. Well, I think what an interesting question to pose then would be, what if the same stuff was found in the zipped suitcase, right? Drugs, a gun, a mask, et cetera. But it wasn't Mr. Lowe's stuff, it was somebody else's illegal contraband. I think this question of privacy is a very interesting one. I think that the fact that the District Court was focused on Mr. Lowe having been on probation and the reduced standard of privacy that somebody on probation is subject to is what brought this case into a situation where suppression was denied. And the reality is that if this isn't Mr. Lowe's stuff, but it's somebody else's illegal contraband, I think the District Court has suppressed this stuff immediately. And the fact that it's the cops from the Denver Police Department and not Officer Buechler that do this search should not be lost on this court. Well, but they were in communication with the probation officer on that, and so isn't there some kind of, I mean, there's a doctrine that if a group works together in coordination, each information and authority of one can be attributed to the others as well. Well, I don't think this is a situation where agency law would really apply. I mean, Mr. Lowe's supervised release is very specific. The text is plain and unambiguous. He is subject to searches by an SEO, a United States SEO officer, not any officer of the law, unlike the Knight's case, which arose out of California, which was a Supreme Court decision where that defendant's supervised release terms specifically allowed other officers to search. So there is no evidence that Officer Buechler was actually directing what was happening. There's some ambiguous testimony about him text messaging while he's on vacation. And the fact that this is not an urgent matter, I mean, Officer Buechler gets this tip at midnight. If he thinks this is all going to disappear in a moment, when does crime happen? Happens in the middle of the night. He waits eight hours. The officers get there at 8, 830 in the morning and take their time to eventually search. And so the search itself is is illegal under the Fourth Amendment. I would like to turn to the base offense level in the MDMA because this is something that the court should have little problem with. This case was about MDMA, not meth. What is our standard of review? Your your standard of review, I believe, is abuse of discretion. And there is zero evidence that there is methamphetamine. I want to follow up on that. What exactly is is your argument on the error? What what is the error here? Is it that there was insufficient evidence to support the court's choice of base offense level? Is it is a clear error argument? Are you challenging factual findings? I think it's both, Your Honor, because what is clear here is that there is no evidence of methamphetamine. The only evidence of methamphetamine is that the word methamphetamine is in the word for MDMA, methylenedioxymethamphetamine. So that's it. Just to make sure I understand your argument, if you're arguing clear error, if you're saying that there wasn't that this court made any factual finding, what I was confused about with your brief is that you're suggesting that the lab report is ambiguous. Is that is it your position that the lab report is ambiguous? No, I think the lab report itself is clear. There is no methamphetamine. What the court what was argued below is that the the lab report is somewhat ambiguous. But when you actually look at it, it finds 24.7 grams of MDMA and there are zero grams, not even a trace, not a hint, not a dust speck of methamphetamine. Is identified not the same as trace? I think there has to be something there. You can't say I mean, trace is different than identified amount. Yes, trace. There is an amount. There is no amount when there is zero. But we haven't required quantification, have we? We haven't said you have to quantify the amount to satisfy the guideline. No, but you do have to have some. And all we have here is a very clear lab report that identifies 0.00 grams of methamphetamine. And if it is not, we would like to reserve some. You may. Thank you, counsel. Let's hear from the government. Mr. McKeel, when you're ready. Good morning, Your Honor. May I please support Jess McKeel of the United States? Your Honor, I'd like to take the issues sort of in reverse order and pick up where we just left off on the question of sentencing. Judge Rossman, you pointed out about the clear air standard. In the brief, it does refer to the report as being ambiguous at best. I frankly don't even believe that it's ambiguous. Half the report was cut off in the opening brief. The bottom half of that report, which is at page 74 of the record, very clearly shows that there's a meth in this substance. Now at the top of the report, which is in the brief, it says substances identified. Now, it does not say 0.0 as a meth. It just doesn't say anything there. This is a mixture that had multiple substances. It had MDMA. It had meth. A net weight is assigned to the MDMA. No weight is assigned to the meth. That doesn't mean it's zero. You look further down this report under exhibit analysis, MDMA and methamphetamine confirmed in the composite. So why does that satisfy the detectable amount requirement in the guideline, that it was confirmed? I think if you're to detect something, it has to be detectable. That makes sense. Why isn't this case different though because of the substances involved and one is derived from the other? Well, I think what we've got are delineation of two different substances at the very top. It doesn't all roll it into MDMA as though meth is part of MDMA. There are different substances. They are treated differently. They were analyzed differently. And it specifically says that they're both confirmed in the composite. I think that alone shows that it's detectable because it was detected. It's greater than zero. We don't know how much. So Valdez does not require measurable quantifiable amounts. So that's where I was hoping you would go is to Valdez. Valdez requires a trace amount. A trace amount is a detectable amount. And so this would have us say that just identifying it in the composite satisfies. Well, I would say we have both identified and confirmed. So we know it's there. Now, if it's there, it's got to be at least a trace. So is this just like Valdez or is it different from Valdez? I think Valdez covers this. I really think whether we're using the term trace or not, Valdez says it doesn't have to be quantifiable or measurable. It just has to be there. And it is there. Going to the in-furtherance element for 924C, again, Judge Rossman, you pointed out the preservation issue. I don't believe that this was preserved. I really do believe that this was forfeited to love because two very different elements are at stake here. One is possession. One is possession in-furtherance of a drug trafficking activity. What the defendant argued in his Rule 29 motion, the first time after the government's evidence, he renewed his Rule 29. He didn't add any additional substantive comments. So what we've got is just the one argument on Rule 29. He says, there's nothing tying me to the gun. There's nothing tying me to the drugs. That's the possession element. The question is, is there anything tying the gun to the drugs? That's the in-furtherance element. There's no argument about that. So in this case, what we've got is a very specific argument in the Rule 29 motion as to one element, no reference made to the other elements. Now we get up on appeal, and we're raising a different element. That is the classic forfeiture. That is Lefler. But didn't the district court pass on all the elements? The district court did, but there's still an obligation on the part of the litigant to properly present the issue. That's why we have forfeitures, is so that the district court has an opportunity to flesh these issues out, to present with the argument. It would be nice if the district court had these same arguments made to it, but look, it didn't. The in-furtherance element is a very specific tethering of the gun and the drugs. We've got eight different factors that this court has looked at in the King cases, Rogers. There was no chance to ever flesh that out. The court just kind of did a quick run-through of all the different elements, and it says, yeah, this is in-furtherance. And it didn't speak much more to it, because it wasn't presented. And by no argument on plain error on appeal, now it's waived. And there wasn't even an argument in the reply brief that, hey, plain error should apply. Or even, I disagree with your preservation, but alternatively, plain error should apply. I mean, Loeffler actually involved a plain error being raised for the first time in a reply brief. And the court still said, we're not going to reach it. We're not going to reach this issue. Zander says it's OK, though. Pardon? Zander says it's OK, though, to raise it in a reply brief. Yeah, there are. But here, that's not the case. Correct. Yes, Your Honor. There are times when, if it's raised in a reply brief because a forfeiture waiver is raised by the government, there has to be an opportunity to challenge that. So I mean, I could go on about the merits. I do think there needs to be a nexus between the gun and drugs. I think there's a very clear nexus here. The gun and the drugs, it's not just about proximity. They were in the same compartment, the same suitcase, with Yeah, there may not have been a meth lab, I think, as counsel would describe it. This is a drug trafficking operation. It's all present right there. All the factors that King talks about, type of drug activity, this is possession with intent to distribute. This is not simple possession. It's extensive evidence of narcotics trafficking. He's even got his own brand, the little devil smiley face on the baggies. Accessibility of the gun. I would strongly encourage, if the court says it's not waived, I think King is pretty squarely on point. That brings me to expression. And I think there's essentially four different issues. Subjective expectation of privacy, I don't believe has been met. Objective, legitimate expectation of privacy. Alternatively, there's two different probationary exceptions, assuming that they are separate exceptions, special needs, totality of the circumstances. I want to start with the subject of the expectation of privacy. And I also want to be very clear that what we're looking at, it's just the storage unit and the luggage. The cell phone was raised in the opening brief, wasn't discussed in the reply brief, wasn't part of the motion to suppress. Do we have to treat the suitcase in the storage unit the same as the storage unit, or does that require a different level of analysis, privacy expectation? I think kind of the first question is the premises, the storage unit itself. And that's why what I talked about with the Croft case, Sawyer's from the Seventh Circuit. If there's no expectation of privacy in the premises, there's also no expectation of privacy in a closed container, suitcase, whatever that's left there. You can't just sort of dump your stuff in a place that you have no right to be, and then say, well, I've got an expectation of privacy as long as that suitcase is there. The question is the place where the stuff is. And here there's no subjective expectation of privacy in the storage unit. And the district court found that. The burden, frankly, is on the defendant to show viable ponderance that he has a subjective expectation of privacy. How does the defendant satisfy that burden in the government's view? Do you need an affidavit? I think there are multiple ways that this could be satisfied. For the students behind me, for the longest time, defendants were presented with a Hobson's choice. They wanted to establish standing for purposes of suppression, but whoever wants to say, yeah, those are my drugs, that's my gun, nobody ever wants to say that. The Jones case used the quote about men may wince at claiming ownership of contraband. Well, of course, which is why we have Simmons. Simmons v. United States cleared that up, eliminated the Hobson's choice, and said, you can present evidence, you can testify at a suppression hearing to establish standing, and then not have that used against you at trial. But the defendant in this case did not take advantage of Simmons. That was a strategic choice, a conscious choice. Whether it was good or bad is not for me to say, but the fact is that there's no testimony, there's no affidavit, there's not even a stipulation. There's nothing that says, that was my storage unit, I expected privacy in it. Or even something simpler, something going to the specific facts. I was the one that put that lock on. I'm the only one that has a key. And additionally... The fact is that there was a lock, and apparently he had access to the lock. I'm not so troubled about the subjective evidence when you have it in a cage with a lock that you have the access to. I'm really eager for you to get to the second problem, which you said you would, which is the objective. And I'm particularly curious about, and a potential analogy, to homeless people that have tents and they just put them up on public ground that they have no right to be on. Could somebody... Is that analogous? Do they have a right of privacy in the stuff inside their tents? And could somebody just come and just take anything they want from that tent, or a police officer could just bust into a tent without any repercussions, even though somebody was living there? What law about that do you have? Well, fortunately, this case does not require me to go down that road, but I think... Well, it seems to me it's analogous in that you've got a tent, you've zipped it, you probably put a little padlock on the zip, but you're not in a place you have a right to be on. This guy, same way. He's in a place he didn't have a right to be, but he had a lock on the perfect, but my question still stands. What law is there about the right of privacy in tents on public land? So I do not have any specific case, but I would talk about, again, where is the tent? Is it on public property? Is it on the sidewalk? Is it on somebody's private property? I think that's going to be one key distinction as to whether this person is essentially trespassing. No, I'm not sure. What law do you have about that? I mean, whether it's on public property, public or private property, it's not on his property. That's the important thing. I don't see that that other distinction adds much to the analysis, but go ahead. Well, property concepts are just instructive. They are not dispositive. That's the first starting point. I think Roccas and Bird talk about, we're not going to say that somebody has to have a property interest, but I do think if somebody is setting up a tent on my front lawn, necessarily, that is my private property. That's becoming a trespass. That's a different scenario than just being on the sidewalk. I understand your Honor's point. I think... The bottom line is you don't have any cases that, in the context of people living through tents or sleeping bags or someplace on property they don't own, as to whether there's interest in privacy for those people or not. I do not. That was a research trail. This is a case that I'm taking down. But I do think that a key point for the objective problem is, is society prepared to recognize something as legitimate? And I think that, you know, would your Honor's hypothetical, you know, would society be prepared to recognize as legitimate if somebody has a tent on the sidewalk? Do they have an expectation of privacy? I think it's a troubling issue. It's one that is facing political leaders and people at a far higher pay grade than... So what's your best case for this point? Is it Croft? For the objective expectation? Yes. I would say that there's two key cases. I would say Ruckman and Judge Ebell, your decision in Johnson as well. Ruckman being a squatter case. And again, in that case, it was a squatter living in a federal cave. What the court said is, this person could be ousted at any time. And he, you know, that person did actually manifest a subject of expectation of privacy. There actually was evidence that he put up a, I believe it was like a wood plywood to block the door. I mean, this was his home. The dissent really delves into that this was this person's home. And maybe Ruckman is actually, you know, somewhat instructive as to the tent issue. But the key there was he was squatting. He did not have a lawful right and thus could be ousted by the rightful owner at any time, which is exactly what happened. Eventually the federal government said, you got to go. And in the process did find drugs. The second key case is Johnson. Johnson, I think, is particularly on point because it deals with storage units. Now, in that case, the defendant obtained the storage unit through basically fraudulent identity. He used somebody else's ID to then rent the unit. What I think is interesting is that Johnson cites to an excerpt case called Cayman and Cayman specifically and relies extensively actually throughout this decision. Cayman said there's no difference between fraud, trespass, theft. The key is all boils down to was it wrongful? And that we get that terminology out of the Rackus case recently used again in Bird. What this really boils down to is someone does not have a legitimate expectation of privacy in not being caught. That is, again, from Bird. The car thief does not have a legitimate expectation of privacy driving around in a stolen car. The burglar plotting his trade at the summer cabin during the off-season does not have a reasonable expectation of privacy. Somebody coming in using a storage unit they have no right to. And someone, again, we don't know, is the defendant. Slapping a lock on it, tossing his stuff in, and then hoping not to get caught. Well, we're pretty sure it was the defendant because he could open the lock. He could get into it. So either he put it on or somebody put it on and gave him access rights to it. Well, in this case, I would point to the opening brief of 49 says there's no evidence that he had a key. So we don't know. Well, but in the phone calls he was asking his wife to go in there and check things. I mean, he obviously assumed there is evidence that he had access to it. I know. I think the phone calls are particularly damaging evidence at trial. Well, they were not. They're not. They're not. They're not an unmixed piece of evidence for him by no means. But still, I think at least on that point, I would point to the opening brief of 49 says there's no evidence that he had access to it. So either he put it on or somebody put it on. Well, in this case, I would point to the opening brief of 49 says there's no evidence that he had access to it. I know. But still, I think at least on that point, I would point to the opening brief of 49 says I don't know that for a fact. The point is, it wasn't introduced. I guess I think your time's expired. We appreciate your time. Thank you very much. Mr. Was so key. You have a few seconds of rebuttal. Thank you. First, on the preservation, I would draw the court's attention to page 437 of the October 13th transcript in which counsel for Mr. Lowe specifically talks about the close proximity of the firearm, which is one of the factors that the court would consider determine whether a gun was possessed in furtherance of a drug trafficking crime. I think this issue was raised below. It was in the motion. It was then reiterated in the rule 29 motion during the trial. And it is thus preserved. As far as the question about fraud, Judge Rossman, I think Croft is interesting here because Croft, there is a warrantless search of the hotel room. The cops do not seize anything. Instead, what happens is the hotel manager takes possession of the items. And then I believe it's three weeks later then the FBI comes and takes the items. If I may finish. Go ahead. Finish your thought. So what happens here is the cops come to the storage locker, contrary to Croft, and they take everything. They rummage through the zip suitcase. They take what they want. They leave a bunch of stuff there. And they only take some of the items. Property does not and the cops never come subsequently to get it. And that's an important distinction here because what we have is a search and seizure by the police. In Croft what you have is a warrantless search but no seizure. We would ask that the court reverse and remand either for resentencing on the MDA issue or reverse and remand for an instruction request. Thank you, Counsel. Very much appreciate the fine arguments this morning. Counsel are excused and the case will be submitted.